762 F.Supp. 1124 (1991)
NEW YORK STATE ASSOCIATION OF CAREER SCHOOLS, City Technical Institute, Island Drafting and Technical Institute, Nassau School for Medical and Dental Assistants and Paralegal Institute, Plaintiffs,
v.
STATE EDUCATION DEPARTMENT OF the STATE OF NEW YORK, Bureau of Proprietary School Supervision, Joseph P. Frey, James A. Kadamus, Donald J. Nolan, Robert J. Maurer, and Thomas Sobol, Each of the Individual Defendants Being Sued in His Individual as Well as Official Capacity, Defendants.
No. 89 Civ. 4459 (PKL).
United States District Court, S.D. New York.
May 6, 1991.
Carl E. Person, New York City, for plaintiffs.
Robert Abrams, Atty. Gen. of State of N.Y., New York City (Jeffrey I. Slonim, Angela M. Cartmill, of counsel), for defendants.

ORDER AND OPINION
LEISURE, District Judge:
This action was brought pursuant to 42 U.S.C. § 1983, seeking injunctive and declaratory relief with respect to certain New York State regulations regarding the review of proprietary trade school advertising, and the bonding and licensing of proprietary trade school personnel.[1] By stipulation and order signed by this Court on December 21, 1990, this action was dismissed with prejudice. Plaintiffs' counsel has now moved for an order, pursuant to 42 U.S.C. § 1988, granting an award of $47,534.38 in attorney's fees, asserting that plaintiffs were "prevailing parties" within the meaning of the statute. For the reasons set forth below, the motion for attorney's fees is denied.

*1125 Background

Plaintiffs in this action are several proprietary trade schools, as well as an association that represents such schools. Plaintiffs brought this action on June 26, 1989, seeking a judgment declaring unconstitutional and enjoining the enforcement of certain provisions of the New York Education Law. In particular, plaintiffs objected to: 1) the requirement that defendant State Education Department of the State of New York ("SED") give prior approval to proprietary trade school advertising and promotional materials; 2) licensing requirements for individuals who are involved in soliciting, recruiting or enrolling students in proprietary trade schools; and 3) bonding requirements for individuals who are involved in soliciting, recruiting or enrolling students in proprietary trade schools.
The parties disagree in their affidavits and declarations as to much of the subsequent history of this case. Accepting plaintiffs' version of the facts as true solely for purposes of deciding the instant motion, it appears that defendant SED was amenable to the elimination of the existing requirement for preapproval of proprietary trade school advertising. As of a conference before the Court on June 22, 1990, the parties had agreed to settle the action if a change in the law  at least as to the preapproval requirement  could be obtained. Plaintiffs' counsel states in his declaration that at that conference "I told the Court ... that plaintiffs had already arranged its [sic] end of the agreement by having obtained a provision in the LaValle bill was had [sic] already been reported out of the Senate in which prior review of advertising was specifically eliminated...." Declaration of Carl E. Person, Esq., executed on February 15, 1991 ("Person Decl."), ¶ 14.
By mid-July 1990, both houses of the New York State Legislature had passed a bill that included, inter alia, the elimination of the preapproval requirement. Person Decl., Exhibit G (Memorandum for the Governor from Lieutenant Governor Stan Lundine, dated July 17, 1990). The same bill includes
many important measures for preventing the kind of abuses that have arisen in the vocational school industry. ... Among the bill's most important accomplishments is the heightened ability it would give to the Commissioner of Education to police the industry by enhancing his oversight and enforcement powers. It would make licensing requirements more stringent and would authorize the Commissioner to impose substantial fines and take other disciplinary action against individuals who violate the law. It also would establish a tuition reimbursement fund to protect students in schools that cease to operate or fail to refund tuition or loan money.
Person Decl., Exhibit J (Memorandum for the Governor from Attorney General Robert Abrams dated July 23, 1990). Approval of the bill was recommended by the Office of the Lieutenant Governor, defendant SED, the New York State Consumer Protection Board, the Department of Law, the Higher Education Services Corporation, the Division of the Budget, the Office of the Mayor of New York, the New York State Conference of the N.A.A.C.P., the Citizen's Committee for Children of New York, Inc., the United Way of New York City, the Advocates for Children of New York, Inc., the Victim Services Agency, Legal Services for New York City, the Statewide Youth Advocacy, Inc., the Grand Street Settlement, the New York State United Teachers, the Council of the City of New York, the Alliance of Quality Business Education, East Coast Training Services, Inc., the Registered Business Schools Association of New York State, Inc., and plaintiff New York State Association of Career Schools. Person Decl., Exhibit L. The bill was signed into law by Governor Mario Cuomo on July 30, 1990, effective September 1, 1990. Person Decl., Exhibit L.
In early October 1990, plaintiffs' counsel prepared a proposed "Stipulation of Settlement and Order for Entry of Judgment," which was forwarded to defendants' counsel. Person Decl., ¶ 21 and Exhibit O. The stipulation stated that "the parties were able to obtain the desired legislation" eliminating the preapproval requirement, and *1126 provided that the matter was settled and a final judgment in favor of plaintiffs should be entered. Person Decl., Exhibit O. Counsel for defendants rejected the proposed stipulation and order. Person Decl., ¶ 21. Thereafter, on December 21, 1990, a "Stipulation and Order of Dismissal" was filed, stating merely that "the action is dismissed with prejudice." Person Decl., Exhibit C.
Plaintiffs' counsel has now moved, pursuant to 42 U.S.C. § 1988, for an award of attorney's fees, on the theory that the instant lawsuit was the "catalyst" for the legislation that passed, that plaintiffs thereby obtained the benefits sought in their action, and that plaintiffs are thus "prevailing parties" within the meaning of § 1988.

Discussion
Section 1988 provides, in pertinent part, that "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. "In order to be eligible for attorney's fees under § 1988, a litigant must be a `prevailing party.'" Hewitt v. Helms, 482 U.S. 755, 759, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987). "The fact that [the plaintiff] prevailed through a settlement rather than through litigation does not weaken [his or] her claim to fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated." Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980).
Nevertheless, in making an application for an award of fees under § 1988, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). "To justify an award of such fees, the prevailing party must show a causal connection between the relief obtained and the litigation in which the fees are sought. A causal connection exists if the plaintiff's lawsuit was `a catalytic, necessary, or substantial factor in attaining the relief.'" Gerena-Valentin v. Koch, 739 F.2d 755, 758-59 (2d Cir.1984) (citations omitted) (quoting Commissioners Court of Medina County, Texas v. United States, 683 F.2d 435, 440 (D.C.Cir.1982)); see also Rose v. Heintz, 806 F.2d 389, 391 (2d Cir. 1986) (quoting Gerena-Valentin, supra, 739 F.2d at 758-59); Gingras v. Lloyd, 740 F.2d 210, 213 (2d Cir.1984) ("We see no indication that Congress intended that fees be awarded to a plaintiff ... who obtained only benefits that the defendant plainly would have conferred even in the absence of a lawsuit."); Kutas v. Regan, 712 F.Supp. 445, 447 (S.D.N.Y.1989); cf. American Constitutional Party v. Munro, 650 F.2d 184, 188 (9th Cir.1981) ("the courts have consistently required that plaintiffs seeking to qualify as `prevailing parties' [under § 1988] establish some sort of clear, causal relationship between the litigation brought and the practical outcome realized."); Correa v. Heckler, 587 F.Supp. 1216, 1221 (S.D.N.Y.1984) (plaintiff must establish that her litigation efforts were a "necessary and important factor" in obtaining results).
In the case at bar, the parties dispute the precise extent of the "relief obtained." Both sides agree that the preapproval requirement was eliminated by the 1990 proprietary trade school reform legislation, but differ as to whether the changes as to bond and licensing requirements constituted relief for plaintiffs. The Court need not decide this question, however, because even if the legislation contained all three elements sought by plaintiffs in this action, there remains simply no evidence that plaintiffs' lawsuit was "`a catalytic, necessary, or substantial factor in attaining the relief.'" Gerena-Valentin, supra, 739 F.2d at 758-59 (quoting Commissioners Court, 683 F.2d at 440). In fact, there is no evidence that plaintiffs' suit was even a minor factor in the eventual passage of the legislation.
First, there is no evidence that either the Legislature or the Governor was at all *1127 aware of plaintiffs' lawsuit, let alone moved to enact the reform legislation as a result of it. Plaintiffs' counsel states in his declaration that "it would be impossible to show that each of the legislators who voted for or against the bill at any stage were aware or unaware of any agreement [between plaintiffs and defendants to settle this action]." Supplemental Declaration of Carl E. Person, Esq., executed on April 12, 1991 ("Supp. Person Decl."), ¶ 19. It may or may not be "impossible" in this case to demonstrate such awareness or lack thereof, but plaintiffs' failure to show that the Legislature was conscious of, and motivated by, their lawsuit, is far from "irrelevant," as plaintiffs' counsel claims. Supp. Person Decl., ¶ 19. Rather, valid evidence of such motivation on the part of the Legislature and Governor is precisely the type of showing that would permit this Court to make an award of attorney's fees pursuant to § 1988.[2]
Plaintiffs' counsel's conclusory statement that such evidence exists "by implication," Person Decl., ¶ 22, due to the inclusion of at least one provision that relaxes the regulatory scheme in a bill that otherwise increases oversight of the proprietary school industry, is an inference far too weak to establish the necessary causal link. In fact, plaintiffs' counsel states that plaintiffs originally "sought and obtained [the provision eliminating the advertising review provision] through their retained public relations firm," and not as a result of the instant legal action. Supp. Person Decl., ¶ 19. Plaintiffs' direct effect on the legislative process therefore appears to have been the result of lobbying pressure, and thus an award of attorney's fees is clearly not warranted on that basis. See Kutas, supra, 712 F.Supp. at 447 (denying application for award of § 1988 attorney's fees where "it was [a] newspaper's presentation of plaintiff's sympathetic position, and not plaintiff's legal position, that moved the Comptroller to support legislative relief for the plaintiff.").
Second, plaintiffs have not shown that defendants changed their position as a result of the instant action. Indeed, according to plaintiffs, SED was already in favor of eliminating the preapproval requirement because "SED was kept too busy with all the filings." Person Decl., ¶ 10. The requisite causal connection between lawsuit and benefits obtained is lacking where the plaintiffs "obtained only benefits that the defendant[s] plainly would have conferred even in the absence of a lawsuit." Gingras, supra, 740 F.2d at 213.[3]
Finally, even assuming, arguendo, that defendants did change their position in reaction to plaintiffs' commencement of this action, such a change by defendants does not, by itself, constitute the relief plaintiffs' assert they obtained. Rather, it was the eventual passage of legislation that brought plaintiffs any benefit. Accordingly, the question becomes whether plaintiffs have shown that defendants' resulting actions were, in turn, "`a catalytic, necessary, or substantial factor in attaining'" the legislative provision or provisions that benefited plaintiffs. Gerena-Valentin, *1128 supra, 739 F.2d at 758-59 (quoting Commissioners Court, 683 F.2d at 440).
Plaintiffs' "evidence" in support of an affirmative answer to this question consists of the fact that Mr. Frey and SED supported passage of the legislation as a whole, together with much speculation on the part of plaintiffs' counsel in his declarations. This leads plaintiffs' counsel to the unsupported conclusion that the provision eliminating the preapproval requirement was enacted "only because of the approval of the Governor and the SED." Person Decl., ¶ 23. Although the importance of the Governor's approval is obvious, there is no evidence to persuade the Court that SED's support for the bill was a sufficiently important factor in the bill's passage. As discussed above, numerous other influential governmental agencies and private groups supported passage of the legislation, and plaintiffs have failed to establish that it was SED's support that played a "catalytic, necessary or substantial" role in that passage.
In sum, the causal connection between plaintiffs' suit and the enactment of the legislation containing some of the relief plaintiffs sought is too attenuated in the instant action to support an award of attorney's fees under § 1988. Therefore, plaintiffs' motion for an award of such fees is denied.

Conclusion
For the reasons set forth above, plaintiffs' motion for an award of attorney's fees, pursuant to § 1988, is denied.
SO ORDERED.
NOTES
[1] "Proprietary trade schools" are non-degree granting occupational training programs licensed under § 5001 or § 5002 of the New York Education Law.
[2] In American Constitutional Party, supra, for example, a case similar to the case at bar in which a legislative enactment mooted the lawsuit, plaintiffs submitted as part of their motion for § 1988 attorney's fees the affidavit of a legislator who was a member of the committee that drafted the pertinent legislation. The Ninth Circuit affirmed the district court's denial of the motion for fees, however, noting that the affidavit was not a statement made contemporaneously with the passage of the legislation, and that the affidavit merely stated that the plaintiffs' suit was "discussed" by the committee and not that it played a causal role in the passage of the legislation. American Constitutional Party, supra, 650 F.2d at 188.
[3] If one instead accepts defendants' version of the facts, the lack of causation is also evident. According to Joseph P. Frey, Chief of SED's Bureau of Proprietary School Supervision, SED resisted the Governor's office's draft bill proposal to modify SED's preapproval authority by imposing on SED a mandatory "turn-around time" or by making preapproval of advertising voluntary. Affidavit of Joseph P. Frey, sworn to on March 27, 1991 ("Frey Aff."), ¶¶ 15, 16. SED preferred to relinquish preapproval authority altogether, rather than administer a modified form of preapproval, and thus supported the elimination of the preapproval requirement. Frey Aff., ¶¶ 15, 16. Therefore, again there is no causal connection between plaintiffs' suit and their "relief."